safer, and does away with annoying delays due to blocking the crossing by railroad cars. I know of no statute which prevents the commissioners in this case from taking into account the benefits derived by the property from the improvement, and none has been called to our attention. Some 12 to 15 acres of this tract has been used by the owner as a stone quarry, and a considerable part of it has been excavated to a depth of 50 feet. This part of the property, it is conceded, has not been injured by the depression in the street, which lies wholly opposite the unexcavated part, which extends from East Develan avenue, along and adjoining the railroad right of way, some 1,300 feet. On this unexcavated part of the property the company has several buildings used in its asphalt paving business. It has no building, however, near East Delevan avenue. It cannot be successfully contended that any part of this 26-acre tract is injured by the depression of East Delevan avenue to abolish the railroad grade crossing, except that part immediately adjoining East Delevan avenue, where the depression has been made; that is to say, a piece 295 feet in width on East Delevan avenue adjoining the railroad, and extending back to a depth of not more than 300 feet. Unless streets are to be opened to subdivide this property, it will, of course, be necessary to have a driveway into the property from East Delevan avenue; but it will occupy no more ground in one place than in another, and it can be so placed as to occupy the ground least valuable for other uses, and can be changed from time to time at no great expense. It is not claimed that the owner of this property has sustained any actual damage up to the present time, except for the expense of making the new driveway into the property. The amount of this expense was not shown.

I think the award was clearly excessive, and should not be sustained.

MERRELL, J., concurs.

---

### PERRY v. METROPOLITAN LIFE INS. CO.

(Supreme Court, Appellate Division, Fourth Department. March 3, 1915.)

INSURANCE ⬤⟶615—LIFE INSURANCE—AVOIDANCE FOR FRAUD—RETURN OF PREMIUMS.

 In an action on a life insurance policy, it is not a condition precedent to the maintenance of the defense that the insured misrepresented the condition of his health on applying for the policy that the company shall have offered to return the premiums paid; no duty resting upon one not seeking affirmative relief on the ground of fraud to place the adverse party in statu quo.

 [Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1530, 1532—1534; Dec. Dig ⬤⟶615.]

Action by Josephine C. Perry, as executrix, against the Metropolitan Life Insurance Company. Judgment for defendant in the City Court of Buffalo was reversed in Special Term of Supreme Court, and defendant appeals. Affirmed.

⬤⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The following is the opinion of Bissell, J., at Special Term:

The action in the court below was brought to recover on a policy of life insurance in the sum of $1,000 issued on the life of James W. Wilson, formerly of Lewistown, Pa. The policy was issued November 11, 1910. The insured died May 6, 1911. The plaintiff is the administratrix of the insured. The defense is based on alleged misrepresentations contained in the application, relative to the antecedent health of the insured. The learned trial judge found that on the merits the defense was fully established, stating "that the defense interposed and made herein by the defendant would have been complete, and would have barred any recovery for the plaintiff herein, had the defendant shown that it had offered back to the insured, or to his representatives, the moneys paid by the insured to the defendant as premiums, on discovery by it of the facts which would have avoided the policy. No such tender was ever made." Judgment was therefore given for the plaintiff on the sole ground that the defendant failed to avoid the policy by offering to return the premiums received from the insured.

. This I think was error. No obligation rested upon the defendant to place the plaintiff in statu quo before the defense, which the trial court found was meritorious, could be interposed. The defendant is not actively seeking relief from the contract as in a case of rescission. In offering to prove misrepresentations, it assumed an attitude of simple defense against an unconscionable or unlawful claim, and if it could establish facts sufficient to support such a position it would be inequitable to hold it still liable because of its failure to put the wrongdoer in statu quo. This question has been directly passed upon, and the rule settled by the Court of Appeals, in the case of Flynn et al. v. Equitable Life Ins. Co., 78 N. Y. 568, 34 Am. Rep. 561. In that case the defendant insurance company sought to defend on the ground of misrepresentation or breach of warranty in the application, and it was held that it was no answer to a defense of fraud in an action upon a policy of life insurance that defendant has not returned the premiums paid. The court says: "The principle that a party, seeking to rescind a contract for fraud must return what he has received, has no application to this case." "The plaintiffs have brought an action upon a contract entered into between the deceased and the defendant. The defense is that the contract has been violated by the intestate, and hence no action can be maintained upon it. The plaintiffs are seeking to enforce the contract, and performance on the part of their intestate is a condition of a right to recover. The right to a return of the premiums paid is not necessarily involved in the action. The plaintiffs must establish a cause of action upon the contract; if they fail to do this, they cannot recover, irrespective of the question of whether they are entitled to a return of the premiums or not."

The same rule was laid down in the case of Dowd v. American Fire Insurance Company, 48 Hun, 619, 1 N. Y. Supp. 31, in which the court held that the failure of a fire insurance company to return a premium is not a waiver of the right to plead, in an action on the policy, the concealment by plaintiffs of a fact which, if true and thus concealed, would vitiate the policy, as there was no ground for rescinding the contract until the company was informed of such fact. The court says: "When the fire occurred, the rights of the parties under the policy became fixed, and a return of the premium could not have the effect to change the status of either party. * * * The defendant is not asserting a cause of action against the plaintiffs, or claiming anything of them, but simply defending against the enforcement of a claim under a policy of insurance which the plaintiff claims to be void in consequence of the concealment by the plaintiffs of a material fact, which was vital to the insurance company."

The trial court seems to have overlooked the plain distinction between a rescission which proceeds under an avoidance of the contract and a defense based on its terms, viz., a breach by the insured of his express agreement to correctly state the facts in his application. The one is a case where it is sought to rescind and set aside a contract; the other is a case where the plaintiff's testator has failed to carry out the contract on his part, and where, therefore, no cause of action has ever arisen. This distinction is recognized, · not only in this state, but elsewhere. Thompson v. Traveller's Ins. Co. 11 N.

D. 274, 91 N. W. 75; Georgia Home Ins. Co. v. Rosenfelt, 95 Fed. 358, 37 C. C. A. 96; Austin v. Mutual Reserve Fund Life Asso. (C. C.) 132 Fed. 555; Moore v. Supreme Association, etc (Tex. Civ. App.) 93 S. W. 1077.

It is unnecessary to decide here whether a separate action will lie for the return of the premiums paid. As to that we express no opinion. The evidence of the defendant rested largely upon the testimony of several doctors and a nurse. Several questions propounded to these witnesses, which were clearly inadmissible under the provisions of the Code of Civil Procedure, were stricken out by the court below. Apart from these questions thus stricken out, we have found none that were objectionable, nor has our attention been called to any by the plaintiff's attorney. The plaintiff's claim that this testimony was inadmissible in toto cannot be sustained. The judgment herein should be reversed.

Judgment reversed, and new trial granted, with costs to abide the event.

Argued before KRUSE, P. J., and ROBSON, FOOTE, LAMBERT, and MERRELL, JJ.

Kimball & Stowe, of Buffalo (Maulsby Kimball, of Buffalo, of counsel), for appellant.

Sullivan, Bagley & Wechter, of Buffalo (Joseph A. Wechter, of Buffalo, of counsel), for respondent.

PER CURIAM. Judgment affirmed, with costs, upon the opinion of Bissell, J., delivered at Special Term.

---

(89 Misc. Rep. 230)

### MASON–SEAMAN TRANSP. CO. v. MITCHEL et al.

(Supreme Court, Special Term, New York County. February, 1915.)

CONSTITUTIONAL LAW ⬤⇒230—LICENSES ⬤⇒7—EQUAL PROTECTION—PUBLIC HACK ORDINANCE—"PUBLIC HACK."

The public hack ordinance of the city of New York, as amended in 1914, providing that any vehicle having a taxicab meter and using the streets to carry passengers for hire "shall be deemed a public hack and licensed under this ordinance," is not unreasonable or violative of the equal protection clause of Const. U. S. Amend. 14, as applied to a transportation company whose taxicabs are employed in its private business and operated solely from its private property, or from the private property of certain railroad corporations.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 687; Dec. Dig. ⬤⇒230; Licenses, Cent. Dig. §§ 7–15, 19; Dec. Dig. ⬤⇒7.]

Injunction by Mason-Seaman Transportation Company against John Purroy Mitchel and others. On motion for pendente lite injunction. Denied.

Edgar T. Brackett, of Saratoga Springs, and Arthur Wing, of New York City, for plaintiff.

Terence Farley and George P. Nicholson, both of New York City, for defendants.

COHALAN, J. Application pendente lite for an injunction. The plaintiff seeks to restrain the defendants from enforcing against it the provisions of the public hack ordinance, as amended by an ordinance

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes